# UNITED STATES DISTRICT COURT
## FOR THE
## SOUTHERN DISTRICT OF OHIO

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )
) Case No.
)
1) A black ZTE phone, serial number: 320375895053 )
(hereinafter referred to as "**SUBJECT DEVICE-1**") )
)
2) A black Alcatel phone, FCC ID number: 2ACCJN011 )
(hereinafter referred to as "**SUBJECT DEVICE-2**") )
)
3) A black Samsung phone, serial number: R38F602W49E )
(hereinafter referred to as "**SUBJECT DEVICE-3**") )
)
4) A black LG phone, serial number: 708CYMR2251971 )
(hereinafter referred to as "**SUBJECT DEVICE-4**") )
)
5) A black Samsung phone, FCC ID number: )
A3LSMJ727V (hereinafter referred to as "**SUBJECT** )
**DEVICE-5**") )
)
6) A black LG phone, FCC ID number: 701CYCV346235 )
(hereinafter referred to as "**SUBJECT DEVICE-6**") )
)
7) A black Samsung phone, FCC ID number: )
A3LSPHL710 (hereinafter referred to as "**SUBJECT** )
**DEVICE-7**") )

8) A BLU phone, serial number: 1040018016049349
(hereinafter referred to as "**SUBJECT DEVICE-8**")

9) A silver Apple IPhone, FCC ID number: BCG-E2816A
(hereinafter referred to as "**SUBJECT DEVICE-9**")

10) A silver Samsung phone, FCC ID number:
A3LSMG360T (hereinafter referred to as "**SUBJECT**
**DEVICE-10**")

11) A black Alcatel phone, FCC ID number: RAD475
(hereinafter referred to as "**SUBJECT DEVICE-11**")
Currently located at the Dayton Police Department, 335
West Third Street, Dayton, Ohio 45402.

Case No. 3:19 mj 449

MICHAEL J. NEWMAN

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property: *(identify the person or describe the property to be searched and its given location)*:

See Attachment A.

located in the ___Southern___ District of ___Ohio___, there is now concealed
*(identify the person or describe the property to be seized)*:

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☒ evidence of a crime;
☒ contraband, fruits of crime, or other items illegally possessed;
☒ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 846, 841(a)(1) | Conspiracy to possess with intent to distribute a controlled substance |
| 21 U.S.C. § 843(b) | Use of a communication facility to commit a felony |
| 18 U.S.C. § 922(g) | Felon in possession of a Firearm |

The application is based on these facts:
See Attachment.

☒ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days): is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*[signature]*

Jason M. Barnes, Task Force Officer, DEA
*Printed name and title*

Sworn to before me and signed in my presence.

Date: August 8, 2019

*[signature]*
*Judge's signature*

City and State: Dayton, OH     Hon. Michael J. Newman, U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

I, Jason M. Barnes, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1. I am a Task Force Officer ("TFO") with the Drug Enforcement Administration ("DEA") within the meaning of Title 21, United Stated Code ("U.S.C."), Section 878, that is, and officer of the United States who is empowered by law to conduct criminal investigations of and to make arrests for offenses as detailed in 21 U.S.C. § 878.

2. I am a Task Force Officer ("TFO") with the DEA. I have been employed in law enforcement since December 2001. I currently serve as an officer with the Dayton Police Department ("DPD"). I have been assigned to Patrol Operations and currently assigned to the Narcotics Bureau. I have extensive prior experience in investigating drug cases that resulted in successful prosecution of persons involved in trafficking of drugs, possession of drugs and other related offenses. I have been involved in narcotics related arrests, executed search warrants that resulted in the seizure of narcotics, participated in undercover narcotics purchases and supervised the activities of informants who have provided information and assistance resulting in narcotics purchases. Through training and experience, I am familiar with the manner in which persons involved in the illicit distribution and sales of controlled substances often operate. These subjects usually attempt to conceal their identities, as well as the locations at which they reside and where they store controlled substances and the illegal proceeds derived therefrom. Through training and experience, I am familiar with the practices of narcotics distributors and sellers, whereby they attempt to conceal the true nature, source and location of proceeds of illegal activity, commonly referred to as money laundering. In January 2019, I became a Task Force Officer ("TFO") with the DEA.

3. It has been my experience while conducting other drug investigations that operating drug houses and/or apartments continue to diversify and it is not uncommon to recover different types of illegal drugs from inside the residence. It is also not uncommon to encounter individuals in possession of illegal drugs after leaving from operating drug houses/apartments. In addition, it has been my experience that firearms are commonly kept and located inside operating drug houses and/or apartments.

4. The facts in this affidavit come from my personal observations, my training and experience, the review of certain records, as well as information obtained from other detectives and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested search warrant and does not set forth all of my knowledge about this matter.

## INDENTICATION OF THE DEVICES TO BE EXAMINED

5. Along with other agents and officers, I am currently involved in an investigation of violations for 18 U.S.C. § 922(g) (Possession of a Firearm by a Felon); 21 U.S.C. §§ 846 and 841(a)(1) (Possession to Distribute a controlled substance); 21 U.S.C. § 843 (Use of a Communication Facility) committed by Roger Mathews.  This Affidavit is submitted in support of an Application for a search warrant for the following:

   a. A black ZTE phone, serial number: 320375895053 (hereinafter referred to as "**SUBJECT DEVICE-1**")

   b. A black Alcatel phone, FCC ID number: 2ACCJN011 (hereinafter referred to as "**SUBJECT DEVICE-2**")

   c. A black Samsung phone, serial number: R38F602W49E (hereinafter referred to as "**SUBJECT DEVICE-3**")

   d. A black LG phone, serial number: 708CYMR2251971 (hereinafter referred to as "**SUBJECT DEVICE-4**")

   e. A black Samsung phone, FCC ID number: A3LSMJ727V (hereinafter referred to as "**SUBJECT DEVICE-5**")

   f. A black LG phone, serial number: 701CYCV346235 (hereinafter referred to as "**SUBJECT DEVICE-6**")

   g. A black Samsung phone, FCC ID number: A3LSPHL710 (hereinafter referred to as "**SUBJECT DEVICE-7**")

   h. A BLU phone, serial number: 1040018016049349 (hereinafter referred to as "**SUBJECT DEVICE-8**")

   i. A silver Apple IPhone, FCC ID number: BCG-E2816A (hereinafter referred to as "**SUBJECT DEVICE-9**")

   j. A silver Samsung phone, FCC ID number: A3LSMG360T (hereinafter referred to as "**SUBJECT DEVICE-10**")

   k. A black Alcatel phone, FCC ID number: RAD475(hereinafter referred to as "**SUBJECT DEVICE-11**")

6. SUBJECT **DEVICE-1** through **SUBJECT DEVICE-11** are currently in the custody and control of the Dayton Police Department, 335 West Third Street, Dayton, Ohio 45402. In my training and experience, I know that the **SUBJECT DEVICES** have been stored in a manner in which their contents are, to the extent material to this investigation, in substantially the same state as they were when the **SUBJECT DEVICES** first came into the possession of the Dayton Police Department. The applied-for warrant would authorize the forensic examination of the **SUBJECT DEVICES** for the purpose of identifying and seizing electronically stored data particularly described in Attachment B.

## PROBABLE CAUSE

7. In August 2018, I was contacted by a confidential and reliable informant (CI) who stated Roger Mathews, who distributes large amounts of cocaine, lives in a house at the corner of Hamilton Avenue and Milton Street and also owns the house next to it. The CI also stated Roger Mathews is associated with a black Chevrolet Tahoe that is commonly parked in front of the house. This C.I. has provided information in the past that has proven to be true and accurate through independent investigation and led to the issuance of search warrants and the recovery of illegal drugs, money and weapons. This C.I. provided this information on a voluntary basis in hopes of monetary reward.

8. In March 2019, as part of my investigation into Mathews since August 2018, I re-contacted the CI who provided me the initial information. The CI stated Mathews is still actively distributing large amounts of cocaine based on recent knowledge the CI has of Mathews.

10. I researched Roger Mathews through the Dayton Police Department's Management Information System (MIS). I located domestic violence crime report 170623-0091 that occurred on June 23, 2017, at 208 Hamilton Avenue. Roger Mathews and Rhonda McGlown were the complainants. I located vandalism crime report 150827-0068 that occurred at 208 Hamilton Avenue. Roger Mathews was the complainant. Further research of MIS documents a traffic citation issued to Roger Mathews on June 21, 2017, for an unsafe vehicle. The vehicle was a 2008 black Chevrolet Tahoe, Ohio license plate GSJ4962. I also located a housing violation citation issued to Roger Mathews on April 12, 2017, for failure to maintain the exterior of his property at 212 Hamilton Avenue, which is next door to 208 Hamilton Avenue.

11. I found through the Ohio Law Enforcement Gateway website, the registered owner of the Chevrolet Tahoe, Ohio license plate GSJ4962, is Rhonda McGlown.

12. I researched the Montgomery County's Auditors website. The address 208 Hamilton Avenue which Roger Mathews lives in is owned by Fat Investment Group LLC and 579 Blair LLC. The address 212 Hamilton Avenue is owned by Roger Mathews. The address

3

        212 Hamilton Avenue appears to be an unoccupied vacant residence based on my observations during this investigation.

13. I researched the Ohio Secretary of State's website. The agent/registrant information for both LLCs is Andre Tinsley. The address listed is 6586 South Oak Knoll Drive, Cincinnati, Ohio 45224.

14. On September 11, 2018, I drove past 208 Hamilton Avenue and observed the Tahoe, Ohio license plate GSJ4962, parked on front.

15. During the course of this investigation, I received information from the CI that Roger Mathew's cellular phone number is (937) 818-8881.

16. I researched MIS and located a traffic citation issued to Roger Mathews on November 1, 2018, for driving under suspension. He was driving a 2004 silver Pontiac Bonneville, Ohio license plate HNG6607. Mathews listed his address as 208 Hamilton Avenue and his phone number as (937) 818-8881 on the citation.

17. On March 21, 2018, Detective Mollie M. Hamby, Detective Dedrick and I conducted a trash pull at 208 Hamilton Avenue. There were two City of Dayton trash receptacles placed and left in the public alley behind the residence. We could also see other receptacles in the neighborhood were out for trash collection. Inside one trash bag, which was tied up, we recovered mail addressed to Roger Mathews at 208 Hamilton Avenue along with a reciept for Roger Mathews at 208 Hamilton Avenue from American Frieght Furniture Center for the purchase of a sectional couch that was "Nevada Black" in color. We also recovered a plastic baggie with a white residue inside along with other additional baggies, some with their corners torn off. Plastic bags with their corners torn off are consistent with processing and trafficking drugs. The baggies are tied to ensure the contents remain. The bags are torn open to obtain the contents. The white residue from the plastic baggie field tested positive for cocaine.

18. Also in the same trash recepticle along with the above recovered items were two other trash bags containing large couch sized plastic protective coverings commonly used in shipment of furniture. The protective coverings had labels stating "Nevada Black".

19. Inside another trash bag, which was tied up, we recovered mail addressed to Roger Matthews at 208 and 212 Hamilton Avenue, plastic baggies, some with their corners torn off and a plastic bag wrapped in grey tape. Inside the plastic bag wrapped in grey tape was a plastic bag with an unknown brown liquid which smelled similar to wet coffee grounds. Coffee grounds are commonly used as an odor masking agent used in packaging large amounts of narcotics to prevent detection by law enforcement drug canines.

20. Inside another trash bag, which was tied up, we recovered plastic baggies, some with their corners torn off. Inside an additional trash bag, which was tied up, we recovered mail addressed to Roger Matthews at 208 Hamilton Avenue, plastic baggies and a water bottle with a white residue inside. The white residue from the water bottle field tested positive

4

for cocaine. All evidence collected was placed into the Dayton Police Department property room.

21. I drafted a search warrant for 208 Hamilton Avenue. The search warrant was signed by Dayton Municipal Court Judge Daniel Gehres on March 22, 2019 at 6:28 P.M. On March 23, 2019, members of the Drug Enforcement Administration along with the Dayton Police Department executed a search warrant at 208 Hamilton Avenue, Dayton, Ohio 45403. Roger Mathews was inside 208 Hamilton Avenue. A search of the residence was completed and numerous items of evidence were recovered. 1.87 grams of cocaine was recovered inside a Pacman arcade game in the basement. A loaded Taurus .40 caliber handgun, serial number SCU65474 was located under a pool table in the basement. $36,600 in U.S. currency was found in hidden trim of basement wall. A ZTE phone (**SUJECT DEVICE-1**) was located on Mathews' person. A digital scale with white residue was located on top of a microwave in the kitchen. A black Alcatel phone (**SUBJECT DEVICE-2**) was located on the living room table. A black Samsung phone (**SUBJECT DEVICE-3**), a black LG phone (**SUBJECT DEVICE-4**), a black Samsung phone (**SUBJECT DEVICE-5**), a black LG phone (**SUBJECT DEVICE-6**) and a black Samsung phone (**SUBJECT DEVICE-7**), were located in a metal cabinet in master bedroom. A black BLU phone (**SUBECT DEVICE-8**) was located on top of dresser in master bedroom. A silver Apple IPhone (**SUBECT DEVICE-9**) was located behind a speaker on mantle in living room. A silver Samsung phone (**SUBJECT DEVICE-10**) was located on table in den. A black Alcatel phone (**SUBJECT DEVICE-11**) was located from file cabinet drawer in master bedroom. Mail addressed to Roger Mathews for 212 Hamilton Avenue was located on floor of master bedroom. Spectrum, DP&L and Vectren bills to Roger Mathews were located in a file folder in master bedroom. A partial box of .40 caliber bullets and a Taurus .40 caliber magazine were located in the master bedroom.

22. Following this incident, I reviewed the criminal history for Mathews and I learned the following: Roger Mathews was convicted of possession of cocaine, a felony of the third degree, on August 2, 2010 in the Common Pleas Court of Montgomery County, Ohio, case number 2010CR00412. Roger Mathews was convicted of possession of cocaine, a felony of the third degree, on March 22, 2001 in the Common Pleas Court of Montgomery County, Ohio, case number 2001CR00056.

23. I know from my training and experience investigating drug trafficking, along with purchasing drugs in an undercover capacity, that cell phones are commonly used by drug traffickers to facilitate selling drugs. It is common for drug traffickers to have numerous cell phones in their possession which often contain phone numbers of the drug buyers. The cell phones often contain phone call history with drug buyers, text message conversations setting up drug transactions, photographs of illegal narcotics and/or firearms, and other miscellaneous items relating to drug trafficking.

24. Additionally, based on my training and experience, individuals who commit gun violations commonly take photographs of themselves and others with the firearms. The **SUBJECT DEVICES** recovered in this matter are all capable of taking and storing photographs.

5

## TECHNICAL TERMS

25. Based on my training and experience, I use the following technical terms to convey the following meanings:

    a. Wireless telephone: A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

    b. Digital camera: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

    c. Portable media player: A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files. However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

    d. GPS: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an

6

extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

e. PDA: A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments or notes) and utilizing computer programs. Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail. PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can store any digital data. Most PDAs run computer software, giving them many of the same capabilities as personal computers. For example, PDA users can work with word-processing documents, spreadsheets, and presentations. PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

f. Tablet: A tablet is a mobile computer, typically larger than a phone yet smaller than a notebook, that is primarily operated by touching the screen. Tablets function as wireless communication devices and can be used to access the Internet through cellular networks, 802.11 "wi-fi" networks, or otherwise. Tablets typically contain programs called apps, which, like programs on a personal computer, perform different functions and save data associated with those functions. Apps can, for example, permit accessing the Web, sending and receiving e-mail, and participating in Internet social networks.

g. Pager: A pager is a handheld wireless electronic device used to contact an individual through an alert, or a numeric or text message sent over a telecommunications network. Some pagers enable the user to send, as well as receive, text messages.

h. IP Address: An Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet. An IP address is a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178). Every computer attached to the Internet computer must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination. Most Internet service providers control a range of IP addresses. Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

7

      i. Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

26. Based on my training, experience, and research, I know that **SUBJECT DEVICE-1, SUBJECT DEVICE-2, SUBJECT DEVICE-3, SUBJECT DEVICE-4, SUBJECT DEVICE-5, SUBJECT DEVICE-6, SUBJECT DEVICE-7, SUBJECT DEVICE-8, SUBJECT DEVICE-9, SUBJECT DEVICE-10,** and **SUBJECT DEVICE-11** have capabilities that allow them to serve as a wireless telephone and digital camera, along with further capabilities that allow them to serve as a wireless telephone, digital camera, portable media player, GPS navigation device, and PDA. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

27. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

28. *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the **SUBJECT DEVICES** were used, the purpose of their use, who used them, and when. There is probable cause to believe that this forensic electronic evidence might be on the **SUBJECT DEVICES** because:

    a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

    b. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

    c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

    d. The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is

8

      e. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

29. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the **SUBJECT DEVICES** consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

30. *Manner of execution.* Because this warrant seeks only permission to examine devices already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

31. I submit that this affidavit supports probable cause for a search warrant authorizing the examination of the **SUBJECT DEVICES** described in Attachment A to seek the items described in Attachment B.

Respectfully submitted,

_____
Jason M. Barnes
Task Force Officer
Drug Enforcement Administration

Subscribed and sworn to before me on August 8, 2019:

_____
Hon. Michael J. Newman
UNITED STATES MAGISTRATE JUDGE

9

## ATTACHMENT A

### DESCRIPTION OF PROPERTY TO BE SEARCHED

The property to be searched is the following:

1) A black ZTE phone, serial number: 320375895053 (hereinafter referred to as "**SUBJECT DEVICE-1**")

2) A black Alcatel phone, FCC ID number: 2ACCJN011 (hereinafter referred to as "**SUBJECT DEVICE-2**")

3) A black Samsung phone, serial number: R38F602W49E (hereinafter referred to as "**SUBJECT DEVICE-3**")

4) A black LG phone, serial number: 708CYMR2251971 (hereinafter referred to as "**SUBJECT DEVICE-4**")

5) A black Samsung phone, FCC ID number: A3LSMJ727V (hereinafter referred to as "**SUBJECT DEVICE-5**")

6) A black LG phone, FCC ID number: 701CYCV346235 (hereinafter referred to as "**SUBJECT DEVICE-6**")

7) A black Samsung phone, FCC ID number: A3LSPHL710 (hereinafter referred to as "**SUBJECT DEVICE-7**")

8) A BLU phone, serial number: 1040018016049349 (hereinafter referred to as "**SUBJECT DEVICE-8**")

9) A silver Apple IPhone, FCC ID number: BCG-E2816A (hereinafter referred to as "**SUBJECT DEVICE-9**")

10) A silver Samsung phone, FCC ID number: A3LSMG360T (hereinafter referred to as "**SUBJECT DEVICE-10**")

11) A black Alcatel phone, FCC ID number: RAD475 (hereinafter referred to as "**SUBJECT DEVICE-11**")

**SUBJECT DEVICE-1** through **SUBJECT DEVICE-11** are currently located at the Dayton Police Department, 335 West Third Street, Dayton, Ohio 45402.

This warrant authorizes the forensic examination of **SUBJECT DEVICE-1** through **SUBJECT DEVICE-11** for the purpose of identifying the electronically stored information described in Attachment B.

## ATTACHMENT B

1. All records on the **SUBJECT DEVICES** described in Attachment A that relate to violations of 18 U.S.C. § 922(g) (Possession of a Firearm by a Felon); 21 U.S.C. §§ 846 and 841(a)(1) (Possession to Distribute a controlled substance); 21 U.S.C. § 843 (Use of a Communication Facility) and involve Roger Mathews. since August 1, 2018, including:

   a. lists of customers and related identifying information;

   b. types, amounts, and prices of drugs trafficked as well as dates, places, and amounts of specific transactions;

   c. any information related to sources of drugs (including names, addresses, phone numbers, or any other identifying information);

   d. any information recording Roger Mathews' schedule or travel from March 19, 2016 to the present;

   e. all bank records, checks, credit card bills, account information, and other financial records.

2. Evidence of user attribution showing who used or owned the **SUBJECT DEVICES** at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.